### THE EDGAR F. LUCKENBACH.

### THE WALLACE B. FLINT.

#### (District Court, S. D. New York. July 7, 1903.)

1. COLLISION—TUGS WITH TOWS MEETING—VIOLATION OF RULE FOR PASSING.

Two tugs *held* in fault for a collision between their respective tows in East river for violation of article 18 of the inland rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2281]), which required them when meeting to pass port to port, and one with two barges lashed together in tow on a short hawser, having a combined width of 85 feet, for the further reason that, after making the agreement for passing, she failed to comply with it by changing her course until the two vessels were so close together that her tow could not follow in time to avoid the collision.

In Admiralty. Suit for collision.

James T. Kilbreth, for libellant.
Peter S. Carter, for Luckenbach.
Carpenter, Park & Symmers, for Flint.

ADAMS, District Judge. The libel herein was filed by the Coastwise Steamship Company against the tugs Edgar F. Luckenbach and Wallace B. Flint, to recover the damages it suffered from a collision which occurred in the East River, about 9 o'clock p. m., on the 9th of November, 1901, between its barge Chalmette, in tow of the Luckenbach on hawsers and a car float, which was being towed by the Flint on her starboard side.

The Luckenbach, with the Chalmette and another barge, both of them light, was bound from Providence, Rhode Island, to Newport News, Virginia. She had brought the barges through the Sound tandem, on long hawsers, but when the vicinity of Riker's Island was reached, they were placed alongside of each other, bow to bow, the Chalmette being on the starboard side, and made securely fast. A short hawser, of 25 or 30 fathoms, was then run from the bow of each barge to the bitts of the Luckenbach.

The Flint, with a car float on each side, backed out of the slip, between piers 45 and 46, East River, and straightened up the river, bound for the Harlem River. The whole tow was about 90 feet wide. The Luckenbach and tow were then coming down the river, at the rate of 6 or 7 miles per hour, and showed the Flint her red and her green light, as well as her towing lights. There was also another tug, with a car float on each side, coming down the river, showing both of her colored lights and her towing lights. She was about abreast of the Luckenbach and their courses were parallel. There were about 100 feet of clear water between the tows. After the Flint had straightened up the river, she showed both of her colored lights, as well as her towing lights, to the other vessels.

The tide was ebb. All the lights were clearly made out by the respective vessels. There is some reference in the Flint's testimony to the Chalmette's lights being dim, but such fact is not established. It was clearly recognized from the beginning that the Luckenbach had a tow astern.

In this situation, the Flint undertook to go between the other tows. She blew a signal of one whistle to the No. 12, which the latter answered with a similar signal and kept her course and speed. After the response of the No. 12, the Flint blew a signal of two whistles to the Luckenbach, which the latter answered with a similar signal. She was then about a half a mile away from the Flint. As the Luckenbach did not immediately conform to the agreement, the Flint repeated the signal when they had approached each other to within 300 or 400 feet and the Luckenbach again replied with a signal of two whistles. The No. 12 and the Flint passed port to port, about 15 or 20 feet apart. Immediately before reaching the Flint, the Luckenbach stopped her engine and sheered to port and passed the Flint's starboard float about 20 or 25 feet away. She then sheered back, but left the tow to take care of itself. The tow came on with the impetus already given to it by the Luckenbach, aided by the tide, and the Chalmette brought up with her starboard bow against the starboard corner of the starboard float and suffered severe injuries.

The libellant contends that both the Flint and the Luckenbach were in fault, the former principally because she initiated a starboard to star-

board course of navigation, when the rules required that the vessels should pass port to port—Inland Rules art. 18 (Act June 7, 1897, c. 4, § 1, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2281])—and the latter, because she consented to the proposed course, and did not conform to it. The Luckenbach at first joined in other charges made by the libellant against the Flint, viz.: in that she did not maintain a proper lookout; in that she did maintain an improper rate of speed; in that she did not reverse when danger of collision was imminent, etc. The Luckenbach denied all faults on her own part and finally relied upon a charge against the Chalmette that she permitted her hawser to become slack and in that way caused both herself and the Independent to sheer into the Flint's tow. The Flint urges that the Luckenbach and the Chalmette were both in fault, the first because the Luckenbach did not change to port as indicated by her signals, and the Chalmette because she did not have a lookout, and failed to change her course to port.

The part of the river in which the collision took place is much in dispute, those on the Flint and the master of the Luckenbach contend it was in about the middle of the river. Numerous other witnesses say it was close to the Brooklyn shore. After the collision, the barges were very close to the Brooklyn shore but they had swung around then so that they were heading up the river and had doubtless been somewhat set over by the tide. It is probable that the collision was on the Brooklyn side of the river but not so close to the shore that there would have been any difficulty in the tows passing port to port.

I consider that the libellant's principal charges against the tugs should be sustained. It is not necessary to pass upon the minor ones. It is urged by the Flint that she was just starting after getting her heading up the river and that she was practically under no headway. As I find that the place of collision was about opposite pier 50, at the foot of Montgomery Street, Manhattan, and she had proceeded to that point from about opposite pier 45, she had actually proceeded up the river, against the tide, about 1,200 feet, while the Luckenbach had probably come down the river in the same time, more than double the distance. There was, therefore, ample opportunity for the vessels to conform to the rule and no adequate reason has been given for adopting a course at variance with it. Such course should not have been initiated by the Flint, but having been consented to by the Luckenbach, the latter should have been vigilant to conform to the agreement, in which duty it failed, no change of course having been made by her until the second set of signals when the vessels were in such close proximity that collision was imminent.

I do not find any fault on the part of the Chalmette. She had no lookout stationed forward but that omission did not in any way contribute to the collision. With respect to the alleged sheer of the barges to the starboard, the testimony shows that the Chalmette and the Independent were respectively 34 and 51 feet wide or a combined width of 85 feet. The Luckenbach was probably about 30 feet wide. With the barges following directly behind, the Chalmette's starboard side would have been about 30 feet nearer the Flint's course than the starboard side of the Luckenbach. The starboard bow of the Chal-

mette struck the starboard corner of the float and as the Luckenbach, by changing to port, only passed 20 or 25 feet away from the float, it is evident there was no sheer by the barges but merely a failure on their part to immediately follow the tug. There is uncontradicted testimony that the Chalmette's helm was starboarded as soon after the Luckenbach changed as practicable but that it did not have any effect because the Independent did not follow, and the Chalmette, being so much the smaller, could not steer both vessels. There were no witnesses examined from the Independent. She belonged to the owner of the Luckenbach and it must be presumed in the absence of any explanation of their non-production that if any witnesses favorable to the Luckenbach could have been produced they would have appeared on the trial.

Decree for the libellant against the Luckenbach and the Flint, with an order of reference.